Smith, C. J.
This is a motion for a new trial on question reserved at the trial the present Term. It is an action 'of trover, to recover the value of a dark-red horse, property of *245 the plaintiff, converted by defendant to his own use, Sept. 17, 1805, at Sandwich ; the value is alleged to be $70.
Plea : the general issue.
On the trial, it appeared in evidence and by admissions of the parties, that the plaintiff was once the owner of the horse in question; that the defendant owned two farms, one in Sandwich, and one in New Holderness; the farm in New Holderness is within half a mile of plaintiff’s. The defendant, till spring, 1805, lived on the Sandwich farm, and his son on the New Holderness farm; but, at that time, his house in Sandwich being burnt, he removed to his farm in New Holderness, with his family, and continued there till after the month of September, in the same year. On Sept. 16, 1805, the horse in question was found in defendant’s corn and field, on the New Holderness farm, doing damage; the defendant immediately took him up, and, there being no pound in New Holderness, confined him in his barn or yard, which was situate in the same field where the damage was done ; and immediately sent a written notification to the plaintiff, of which the following is a copy: —
“New Holderness, Sept. 16, 1805.
“Jona. Smith, Sandwich,—
“ A dark-red horse is taken up doing damage in my corn and field, and is impounded; the damage estimated at $2. The horse is supposed to be yours. The settling the costs and damages this forenoon will prevent further cost and trouble. Elias Ladd.”
On this notice, the plaintiff immediately came to the defendant’s barn or yard where the horse was, and conversed with the defendant on the subject, but made no objection to the estimate of damage, or to any uncertainty in the notification, or required any more particular information. He did not offer to pay the damages, or any thing for damage or charges ; nor did he replevy, or apply to a justice of the peace to have the damages appraised.
On September 19, the defendant applied to a justice of the peace to have the damages appraised, which was regularly done, and report made to the justice, Sept. 20, 1805 ; damages *246 $2.50: The plaintiff still neglecting to pay the damages so assessed and reported, and the charges incurred as assessed by the justice, and not replevying, on September 26, the justice, by his warrant, ordered the horse to be sold, for payment of the damages and costs (the costs being $7.50, besides fifty cents for the warrant), at public auction; which was done in due manner, and the horse was fairly sold for $6. The proceedings of the justice were regular throughout, and due notice given to the plaintiff wherever such notice was required.
The jury found for the defendant.
The plaintiff, in the course of the trial, made several objections to these proceedings, which are now to be considered.
I. He offered to prove that the fences were insufficient; that the horse did not do all the damage which was considered by the appraisers, part of that damage only [?] was done by other creatures ; that the appraisers did not estimate the damage at the sum reported, but at $1 only; that Ladd himself wrote the report, and inserted $2.50 instead of $1, &c.
This evidence was not admitted. The Court were of opinion that the report was final and conclusive, between the parties, as to the trespass and as to the damages. Smith might have had the damages appraised, if he had so pleased ; or he might have attended the appraisers appointed at the instance of Ladd, or on the return to the justice, (a) This ex parte hearing is as conclusive as if both parties had attended, as binding as a judgment of court; we cannot now inquire into the merits. I do not know that we can now inquire into the fact of an alteration made by Ladd as alleged. The time for such an inquiry was when the report was offered to the justice. But, as to this point, the evidence was gone into by consent, and the jury have acquitted Ladd of the improper conduct attributed to him. As to these particulars, I see no reason, on a careful reconsideration of the whole matter, to be dissatisfied with the opinion of the Court, or the verdict of the jury.
II. But the principal objection was, that the notification was not such as the statute requires ; that it does not describe *247 with sufficient certainty the damage done, the time when and the place where it was done, where the horse was impounded, and the charges then accrued. At the trial, the Court expressed an opinion that the notification was sufficient, and the jury have decided agreeably to that opinion. The question is whether that decision be correct or not.
The intention of the statute is that such notice shall be given that the owner may know what has become of his creature ; may have an opportunity of obtaining it again by paying the damages estimated and charges incurred, or have the damages appraised by indifferent persons ; or, if he should be of opinion that no trespass was committed, that he may replevy the creature impounded. The statute does not require that notice of the place of impounding (a) should be in writing. In this case, it is clear, sufficient notice was given of that fact; for the plaintiff saw the horse in the defendant’s barn or yard. Does this notification certify the owner of the damage done ? It tells him that the horse has done damage in defendant’s corn and field, which he estimates at $2. This is sufficient for all the purposes contemplated. It is as descriptive, though not so technical, as a declaration in trespass qua,re clausum fregit. Does it certify the plaintiff of the time when, the place where, the trespass was committed? It says the horse is taken up, this Sept. 16, 1805, in my cornfield, doing damage. Is not this equivalent to saying the damage was done Sept. 16, 1805 ; and is not this as certain description of the time as a declaration in trespass ? Indeed, in trespass, the proof may be of any day before the action brought. A reasonable construction must be given to the words of the statute. It does not require the hour to be mentioned ; the day is sufficient. The place is described, — my com and field. It is sufficient, if the owner have such information that he may examine for himself. The parties lived within half a mile of each other. The notification does not say, “ my farm in New Ilolderness ; ” but he lived there, as plaintiff well knew. His farm in Sandwich was at the distance of three miles, and he did not live upon it at *248 the time. Could plaintiff suppose he meant that ? A case may be supposed'where a notification in this form would be uncertain. Suppose he owned, in New Holderness, ten farms, instead of one, and lived on neither, but boarded at another place. As the statute prescribes no form of notice, it is sufficient if reasonable notice be given in each case. What would be sufficient in one case might not be so in another. It is further objected that the charges are not specified. As none are specified, it would seem clear that none would have been demandable if Smith had elected to tender and replevy, or sue. But he did neither.
It is, therefore, my opinion that, circumstanced as the present case is, giving a reasonable construction to the statute, the notification is sufficiently certain.
Cases may be supposed where no notification in writing would be necessary at all. Suppose the owner present all the time, see the horse doing damage, see him impounded in the barn or yard in the same field, and the owner tell him, .at the time, he estimates the damage at $ 1. The most that could be taxed for charges in such case would be one penny, which the impounder waives demanding. Though the statute speaks of a written notification, yet, where the end to be accomplished is already answered without, it is unnecessary. It has been holden in this State, in a matter of much greater consequence,' and where the words of the statute are both positive and negative, yet that they may be dispensed with. I allude to the registering of conveyances. The statute says they shall be registered to make them valid to pass lands, and not good without; and yet it has been held that, where the end to be answered by registering, viz. notice, is accomplished without, the deed, against the words of the statute, is good, though not registered. But, independent of this, and on other grounds, I am of opinion that this notice would be good, though not certain enough in itself. I mean that the defect was cured by appearance (a) and no objection made. An uncertain declaration or bad service is cured by appearance and pleading to the merits. The case of tender is stronger than the *249 present. Tender in bank bills is not good. But, if the party make no objection at the time, it is. So here, if this notification is uncertain, as it produced an appearance, and was not objected to in the time of it, it is now too late [to object.]

New trial refused. Judgment on verdict.

[1]

 Qumre. What would that avail? It does not appear justice has any thing to do with the report; cannot recommit, or refuse to accept.

 The place in which the creatures impounded, common pound, or impounder’s barn, &c.

 Attendance at the place on the notice.

 As to the sufficiency of notices relative to impounding, see Drew v. Spaulding, 1864, 45 N. H. 472; McIntire v. Marden, 1838, 9 N. H. 288.
As to the effect of an omission to give proper notice, see Kimball v. Adams, 1825, 3 N. H. 182; Smith v. Brown, 1817, 1 N. H. 36; McIntire v. Marden, 1838, 9 N. H. 288; Young v. Rand, 1847, 18 N. H. 569.
The report of the appraisers was conclusive under the Revised Statutes, as under the statute of 1791. Osgood v. Green, 1856, 33 N. H. 318, 326, 328.
The justice is the mere depositary of the report; and no notice of the time and place where the report will be delivered to him is necessary to he given to the parties. Osgood v. Green, ubi, sup.